35 C.C.P.A.(Patents)

### Application of LEWENSTEIN.
Patent Appeals No. 5370.

Court of Customs and Patent Appeals.
Jan. 6, 1948.

Asher Blum, of New York City, and Raymond J. Mawhinney, of Washington, D.C., for appellant.

W. W. Cochran, of Washington, D.C. (Joseph Schimmel, of Washington, D.C., of counsel) for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of two claims, numbered respective-

ly, 18 and 19, of appellant's application for patent entitled "Improvements in Gold Compounds and Method of Making the Same."

Both claims are product claims. We reproduce claim 18 as representative. "18. As a new and improved compound, an auro-thioanilide of a carboxylic acid, said compound having a straight carbon chain, which has at least two carbon atoms, one terminal carbon atom of said chain being connected by a monovalent linkage to an Au S group, the other terminal carbon atom of said chain being linked by a divalent linkage to oxygen and being also linked by a monovalent linkage to a nitrogen atom, said nitrogen atom being linked by respective monovalent linkages to a hydrogen atom and also to a phenyl radical, said new compound being substantially insoluble in water and in lipoids, said new compound being soluble in body liquids other than lipoids, said new compound being sufficiently pure and non-toxic so that it can be safely injected into the human body, the anilide of the thioderivative of said carboxylic acid being soluble in a solvent in which aurous bromide is also soluble."

Claim 18 is the broader of the appealed claims in that claim 19, as stated in the brief of the Solicitor for the Patent Office, "specifically lists * * * substituent groups of a particular class which have the effect of limiting the scope of the compounds defined in claim 18."

It is not suggested, however, that the difference in breadth or phraseology patentably distinguishes the appealed claims from each other; so they stand or fall together.

We quote the following explanatory matter from appellant's specification:

"My invention relates to new and improved gold compounds, which are especially adapted for therapeutic use, and in particular, for treating tuberculosis, arthritis and other diseases in which gold compounds have heretofore been employed.

"Another object of the invention is to provide gold compounds for therapeutic purposes which are substantially insoluble in water and in certain body liquids, such as the lipoids and muscular liquids, so that a large injection of the compound can be made at relatively long intervals, of about 2-3 months, whereas the gold compounds which are now used and which are soluble in water and in said body liquids, require bi-weekly or weekly injections.

"A compound of the improved type can thus be injected into the body in a regulated dose, thus providing a continuous treatment for a long period, whereas the gold compounds which are now used, are absorbed quickly after each injection."

Two claims, numbered respectively, 1 and 17, stand allowed. No. 1 is for a product defined in the claim as "auro-thio-glycolic-acid-anilide." It was held to be specific to a compound the formula for which is set forth in the specification of the application. It is stated in appellant's brief that this particular product is being sold under the trade-mark "Lauron"; that it is sold only as an ethical preparation; and that it is administered only by physicians.

It appears that claim 1 was in the application as originally filed (being one of eight claims included therein and the only original claim allowed) and was, therefore, a part of appellant's original disclosure; that it was allowed by the examiner in his first decision appearing of record; and that it stood allowed throughout the prosecution of the application in the Patent Office which covered a period of more than five years.

Allowed claim 17, which was finally substituted for original claim 5, is for "A method of making an organic gold compound which is substantially insoluble in water and in lipoids." The basis substance used in the method is the thio-glycolic-acid-anilide named in claim 1.

Neither allowed claim 17 nor the two rejected claims were included in the application as originally filed. The history of their introduction is hereinafter related.

It is noted that the product named in claim 18 is "an auro-thio-anilide of a carboxylic acid," and that the product in claim 19 is not given a scientific name but is referred to as "An improved compound." It contains a specified formula which did not appear in the specification as filed, nor in any amendment of the specification subsequently entered, so far as we have found.

It appears that during the prosecution of the application in the Patent Office certain patents were cited as references and these are listed in the statement of the examiner and in the decision of the board, but no one of them was relied upon as a basis of rejection by either the examiner or the board and there is no reason for encumbering this opinion with them.

As an ancillary reference "to show usage" the examiner cited and the board listed in its decision "Heilbron, Dictionary of Organic Compounds, 1938, Vol. III," specifying the text on pages 752 to 759, inclusive, which text is reproduced in the printed record before us.

In concluding his official statement upon the appeal to the board the examiner said: "For reasons indicated, claims 18 and 19 were refused as (1) not supported by an adequate description and (2) as inclusive of and dependent on new matter."

The board made no reference to new matter in its decision, but did not overrule the examiner's holding on that point. It expressly agreed that appellant's "disclosure is too meager and indefinite to warrant the allowance of claim 18," and that "the disclosure is inadequate to support" claim 19. The board also used an expression, to which reference is hereinafter made, that seems to have led counsel for appellant and the Solicitor for the Patent Office to conclude that it proposed rejection of the appealed claims on the ground of lack of a showing of utility.

Appellant's reasons for appeal embrace twenty-seven allegations of error, but the brief on his behalf states: "In general, applicant urges that the Board erred in holding that Claims 18 and 19 were not based upon a sufficient original disclosure, and in refusing to reverse the ruling of the Examiner on this basic point, and in raising the issue of doubtful value."

The case presents questions of a technical character; the arguments in the briefs, particularly in that for appellant, bristle with formulas; and, adding to the complexity, especially from the standpoint of a layman, "There appears to be," as the board expressed it, "considerable difference between the Examiner and appellant as to the nomenclature to be used." The board, however, stated that it had not considered this difference as to nomenclature since it did not regard that as "germane to the matter in issue."

No question seems to have been raised at any time respecting the disclosure by the application as originally filed of the subject matter of allowed claim 1, nor as to the disclosure (after certain permissible corrections of the specification) of allowed claim 17, but all that appellant can claim with respect to original disclosure of the broader claims 18 and 19 appears to be the following brief paragraph of the specification: "Instead of reacting a 'thio' derivative of glycolic acid with the gold salt, I can use a thio derivative of propionic acid, and the corresponding allyl thio-derivative and in general, the higher thio acids, saturated and unsaturated."

The application was filed in the Patent Office January 31, 1941, and was before the examiner until the latter part of January 1945. During that time the application, except as to claim 1, was several times rejected by the examiner and several times amended as to both the specification and the claims.

In a decision of May 27, 1944, the examiner denied all the claims then in the case except claim 1. This was the fourth rejection by the examiner and he declared it final, but on September 27, 1944, appellant proposed another amendment which the examiner considered in an advisory action of October 12, 1944, refusing it entry because "it does not make the application allowable." On November 25, 1944, appeal on the rejected claims was taken to the Board of Appeals and on that same date appellant filed another proposed amendment which the examiner (in conformity, as we understand it, with the practice) considered and acted upon advisorily before forwarding the appeal to the board.

By the amendment it was proposed to cancel original claim 5 and substitute claim 17 therefor, and also to cancel claims 13 to 16, inclusive, and substitute claims 18 and 19 therefor.

It was also proposed to amend the specification by adding at the end of what is line

8 on page 13 of the printed record before us (the line and page having been different in the typewritten copy before the examiner) the following:

"The formula of thio-glycolic acid, which is also designated as 2-mercapto-ethanoic acid is, HS. CH₂. COOH. It is a derivative of ethanoic acid, which is, regarded as being derived from ethane, CH₃. CH₂, by oxidizing the methyl group, CH₂, to the carboxyl group, COOH. Since ethane has a normal chain C-C, said normal chain is retained in the above-mention improved compound. In said compound, each carbon atom is a terminal carbon atom of said normal chain. One of said carbon atoms is linked by a monovalent linkage to the AuS group. The other carbon atom is linked by a divalent linkage to an oxygen atom, and by a monovalent linkage to a nitrogen atom which is linked by a monovalent linkage to a C₆ H₅ radical, namely, a phenyl radical.

"As later stated herein, thio-propion-anilide can be substituted for the thio-glycolic-anilide, in the reaction later stated herein. The formula of thio-propion-anilide is HS. CH₂. CH₂. CONH. C₆ H₅. Hence the corresponding auro-thio-anilide has the formula, AuS. CH₂ CH₂. CONH. C₆ H₅. This has a normal or straight chain of three carbon atoms, one terminal carbon atom of said chain being connected to the AuS group, the other terminal carbon atom of said chain being connected to said nitrogen atom. As later stated herein, the corresponding allyl derivative can be reacted with aurous bromide. The allyl radical is CH₂ : CH. CH₂. —;"

In his advisory action taken on December 11, 1944, the examiner, after a full discussion, advised, in effect, that appellant might amend the description in a manner which he (the examiner) indicated, and that when so amended claim 17 (the substitute for original claim 5) would be allowable.

As to the amendment to the specification, which was intended to furnish support for proposed claims 18 and 19 additional to the paragraph hereinabove quoted from the original specification, the examiner, acting under the authorization of the Supervisory Examiner, after giving his reasons for regarding the new claims not allowable, of-fered appellant the option of having "the case forwarded on appeal in the condition as of the final [May 27, 1944] rejection" or of having "the amendment of November 28 [25], 1944 entered and the case forwarded with claims 18 and 19 refused for the reasons indicated above."

Appellant elected to have the amendment of November 25 entered and the appeal forwarded to the board with claims 18 and 19 refused.

In discussing the proposed amendment, so far as it related to substitute claims 18 and 19, the examiner said:

"The amendment of Nov. 25, 1944 has not been entered. It will be entered at applicant's option for purpose of appeal. Its entry will not remove the confusion and error in the description. The entry proposed for the end of line 3 of page 3 [Line 8 of page 13 of the printed record before us] insofar as it explains 'thioglycollic acid' is inaccurate and unnecessary. The second paragraph of the proposed insertion attempts to define thiopropionic acid as 2-mercaptopropionic acid. The Dictionary shows that a thiopropionic acid is not a mercaptopropionic acid. There are two mercaptopropionic acids depending on the position of the mercapto group. Even if it be assumed that applicant contemplated a mercaptoprionic [sic] acid when he used the term a 'thio derivative of propionic acid', it is impossible to determine which of the two alternatives was meant and it certainly cannot be assumed that this teaches the class of omega-mercapto fatty acids. It will therefore be held that this portion of the insert is new matter and that proposed claims 18 and 19 are not adequately disclosed and are dependent on new matter. The statement concerning allyl derivative is not understood and does not appear to have any relation to the rest of the description in the case.

"Claim 19 will be additionally rejected as inoperatively broad and as not supported by an adequate description."

In his statement after the appeal had been forwarded to the board the examiner elaborated the foregoing holding. He stated in effect that appellant had presented a variety of generalizations during the

462

prosecution of the case all of which had as their starting points the specific compound of the allowed claims, and said: " * * * It is the Examiner's opinion that these generalizations have been based primarily on language without regard to generally understood chemical knowledge. In part, these generalizations have been based on an erroneous interpretation of the language involved."

With respect to the amendment to the specification of November 25, 1944, hereinbefore quoted, the examiner held it "to be in part new matter and in part unnecessary and also in part erroneous," saying:

"The first paragraph is directed to statements concerning thio glycolic, its supposed derivation, and generalized statements concerning its constitution. Error appears in that ethane is not $CH_3$. $CH_2$ and methyl is not $CH_2$. Since the acid has only two carbon atoms the term 'normal' (as distinguished from branched) chain has no significance and the same criticism applies to 'terminal' carbon atoms, as distinguished from adjacent, or middle, carbon atoms.

"This description of thioglycollic acid is used to support the generalizations in claim 19 describing -x-c as a 'normal chain of at least two carbon atoms' and (in the structure shown) with the linkage at the terminal carbon atoms; The corresponding limitations of claim 18 are similarly supported.

"The second paragraph of the insert * * * is in error in stating that the anilide of thio-propionic acid possesses the structure shown. The structure shown is that corresponding to thio-hydracrylic acid (2-mercaptopropionic acid). This will be apparent from Heilbron who show[s] two different mercapto propionic acids, as well as a thio-propionic acid and the anilide thereof.

"The last two sentences of the paragraph, relating to 'the corresponding allyl derivative' has no possible significance, as may be seen by attempting to place the 'allyl radical' in the structure of claim 19 or the limitations of claim 18."

In his discussion relating specifically to claim 18 the examiner held that it is misleading or erroneous in the expression "auro-thio-anilide of a carboxylic acid,"

saying: "The illustration is a gold derivative of an anilide of *thio*glycolic acid, (i. e. of a mercapto acetic acid). The prefix 'thio' modifies the succeeding term. A 'thio-anilide', a 'thio-carboxylic acid', and a 'thio-hydroxy acid' implies entirely different substitutions of sulphur."

The examiner by the use of italics in quoting from the text of the claim also pointed out what he designated as the critical limitations of the claim not found originally disclosed, as follows: "The critical radical is defined as 'a *straight* carbon chain which has *at least* two carbon atoms, one *terminal* carbon atom of said chain being connected by a monovalent linkage to an AuS group, the *other terminal* carbon atom of said chain being linked by a divalent linkage to oxygen * * *." (Italics supplied by the examiner.)

It was the examiner's position that to support the class of acid radical required by claim 18, it would be necessary for appellant to read "thio-propionic" (as used in the specification as filed) as "mercapto propionic" and limit the latter to beta mercapto form as distinguished from the alpha mercapto form.

In the brief on behalf of appellant before us it is said: "Applicant used 'thio' as meaning the same as 'mercapto'."

The brief of the Solicitor for the Patent Office states with respect to this: "That statement is unsupported in appellant's original description, and, in effect, is actually at variance with the statement in the specification * * * that a thioglycolic acid anilide is the same as a mercapto acetic acid anilide. If the terms 'thio' and 'mercapto' meant the same thing, then it is submitted, no need would exist for using glycolic acid with 'thio' and acetic acid with 'mercapto' in order to properly identify the compound. To those skilled in the art these prefixes are used advisedly to denote different compounds * * *."

We fail to find any mention in the record indicating that appellant advised the tribunals of the Patent Office that he used "thio" as meaning "mercapto," until after the examiner had filed his official statement following the appeal to the board. Appellant seems to have filed some statement in

response (it is not in the record before us) which was referred to the examiner under rule 137, 35 U.S.C.A.Appendix, who replied in part as follows: "On page 5, applicant seems to confuse the issue by alleging that the terms mercapto and thio are interchangeable. These terms per se are not used interchangeably in the illustration given by appellant. The examples given by appellants confirm the Examiner's position. 2-mercapto ethanoic acid and thioglycollic acid do describe the same compound. It is significant however that the term *mercapto* is used to modify the term ethonoic acid (which does not contain a 2 hydroxy group as does glycollic acid) whereas the term *thio* is used to modify the term glycollic acid, to show that the oxygen of the OH group is replaced by S. (i.e. SH). This distinction in these terms has been emphasized in the Examiner's Statement." (Italics quoted.)

The brief on behalf of appellant further pointed out that the Heilbron Dictionary under the heading "Thioglycolic acid (Mercaptoacetic acid)" gave the formula "HS. CH$^2$. COOH," and asserted: "This illustrates the equivalence of 'thio' and 'mercapto' and it repels the Examiner's theory that in a thio acid, the carboxy group, COOH, must be changed to COSH. According to Heilbron, thioglycolic acid has the unchanged carboxy group, and the substitution of 'S' for 'O' is made outside the carboxy group."

It is pointed out in the brief on behalf of appellant that in his specification as originally filed he stated that thioglycolic-acidanilide "is a derivative of *mercapto*-acetic acid (2-*mercapto*-ethanoic acid or *thio*glycolic acid" (emphasis supplied in the brief), and other citations from Heilbron are made to show examples "of a thio acid which retains the unchanged carboxy group," but we fail to see wherein these matters affect the merits of the issue.

It is further asserted that "Claim 18 * * * clearly states that the AuS group is at one end of the straight carbon chain, and that the other end of said chain has the carbon atom linked to oxygen, not to sulphur," and that this applies to claim 19 as well.

We do not deem it necessary to our decision to discuss claim 19 in greater detail than hereinabove stated.

We confess that we do not understand why the board did not regard the nomenclature question germane to the matter in issue.

Appellant evidently did not agree with this view at the time he appealed to this court because in his reasons for appeal he alleged that the board erred "in failing to reverse the ruling of the Examiner as to the nomenclature to be used." He does not discuss the assignment in his brief, however, and we suppose he intended to abandon it. The Solicitor for the Patent Office discusses it, and we fail to discern how the case could be decided without considering it, at least to some extent.

As noted supra, appellant states that he used "mercapto" as having the meaning of "thio." Assuming this to be correct, although not recited originally, it means that the paragraph of appellant's original specification upon which he relies for disclosure of the appealed claims is to be considered as if it read: "Instead of reacting a 'thio' derivative of glycolic acid with the gold salt, I can also use a *mercapto* derivative of propionic acid * * * (italics supplied), and claim 18, supra, is to be considered as if it read "an auro-*mercapto*-anilide of a *carboxylic* acid * * *" (italics supplied).

The product named in claim 18 is an auto-thio-anilide of a carboxylic acid. It is a derivative of propionic acid (which is a homolog, being next above acetic acid in a list of fatty acids), the substance named in the paragraph quoted, supra, from appellant's original specification upon which he relies for original disclosure to support appealed claims 18 and 19. Propionic acid has the formula $CH_3 CH_2$. COOH. It is important to bear in mind that propionic acid contains no hydroxyl group.

Acetic acid is also a homolog (formula $CH_3$ COOH) from which glycolic acid (hydroxy acetic acid) having the formula $CH_2$ OH. COOH is derived. Glycolic acid contains both hydroxy and carboxy groups and, as we understand from the examiner's

statement supported by the Heilbron Dictionary, it is understood in the chemical art that "thio" placed before "glycolic" means that sulphur has been substituted in the hydroxy group—not in carboxy group.

The correctness of the examiner's statement based upon the Heilbron Dictionary that "the prefix 'thio' indicates replacement of an oxygen atom in the compound otherwise named" is not questioned, nor do we find his statement that "the prefix 'mercapto' describes the presence of an SH group, in contrast to 'thio' which indicates the replacement of an oxygen by sulphur" challenged.

Stated differently, when "thio" is used as a prefix, it indicates, according to standard usage, that oxygen has been replaced by sulphur; when "mercapto" is used as a prefix it indicates the replacement by sulphur of either hydrogen or hydroxel, but not the replacement of oxygen in carboxyl.

The standard usage is stated in the brief of the Solicitor for the Patent Office as follows (Heilbron's Dictionary, pages 752, 753, 755, and 759 being cited): "* * * where the prefix 'thio' modifies the name of a compound containing both a hydroxyl (OH) and a carboxyl (COOH) group, proper terminology limits the meaning to a compound in which the hydroxyl group only is replaced by the mercapto group—SH."

It may be said that "mercapto" used as a prefix, according to standard authorities, indicates the presence of an SH group.

It is suggested in the brief of the Solicitor for the Patent Office that, since propionic acid contains no hydroxyl groups, the term thio-propionic acid would be an acid in which sulphur replaces oxygen in the carboxyl group.

We observe that the formula for thiopropionic acid as given by Heilbron is $CH_3 CH_2 CSCH$ and that for thioglycolic acid is $CH_2 SH COOH$; so they differ in that the sulphur is in a different portion of the molecule.

In view of the foregoing, it appears that in asserting that the fact that thioglycolic acid and mercapto-acetic acid have the same formula "repels the Examiner's theory that in a thio acid, the carboxy group, COOH must be changed to COSH," appellant failed to take into account the effect, according to standard usage in the chemical art, of the use of the word "thio" when the compound to which it is applied as a prefix has both hydroxyl and carboxyl groups.

It appears from the specification that appellant clearly described the method by which the product named in claim 1 could be made, so that a person skilled in the art could readily follow it and produce the article which obviously was regarded as new. This cannot be said concerning the products defined in the appealed claims. Appellant seems to us to have endeavored to build up the disclosure, by the use of an elaborate series of formulas, of subject matter which, if he had invented it, or had it in mind at the time of filing his application, might have been and should have been described at least as fully as he described the subject matter of claims 1 and 17. If he, in fact, had the invention but failed to meet the statutory requirement for a clear description in his application as filed, it would seem that upon discovering the oversight he might have protected such invention by filing another application as a continuation in part of his original application.

■ The examiner appears to have stated fully and clearly the essential facts of this somewhat complicated case. Upon the technical features he supplemented his knowledge resulting from his training as a chemist by the citation of a recognized standard authority, the accuracy of which has not been questioned. If appellant had disagreed with any of the findings of fact, and there were good grounds for disagreement, he had opportunity under the Patent Office rules of practice to present pertinent evidence contradicting such findings. We speak, of course, of *facts*, not *deductions*. Deductions may be and frequently are a proper subject for argument; facts are matters to be established by evidence.

In the instant case we think the examiner drew the correct deductions from the established facts.

Up to this point we have confined ourselves almost exclusively to the considera-

tion of the decisions and statements of the examiner so far as the Patent Office's view of the case is concerned.

It has been necessary to do this because with one possible exception the board from whose decision the appeal actually comes to us did not state in any detail reasons for its conclusions, but simply gave sweeping approval to the examiner's decision. Even in the possible exception to which we have just referred, the board's statement seems to us to be somewhat cryptic, or at least difficult to interpret.

In its decision after approving the examiner's finding as to meagreness and indefiniteness the board said: " * * * Judging by what is said in the publication cited the only aurothio compound tested was that defined in allowed claim 1, and even that was of doubtful value. While theoretically the mere addition of $CH_2$ to the molecule should make but little difference still one cannot predict positively that such is the case for in medicines such small changes may make the product react quite differently from the lower homolog. There is nothing in this case that any higher homologs have been tried out."

The "publication" mentioned has reference to one filed at an early stage of the proceedings when the examiner required proof of utility.

The examiner presumably was satisfied with the showing of utility so far as claims 1 and 17 were concerned and we find nothing to indicate that he raised any question as to the utility of the products covered by claims 18 and 19.

Patent Office rule 139 provides: " * * * Should it [the Board of Appeals] discover any apparent grounds not involved in the appeal for granting or refusing letters patent in the form claimed, or in any other form, it shall include in its decision a statement to that effect with its reasons for so holding." 35 U.S.C.A.Appendix.

■ It seems to us that the board's statement would admit of the interpretation that, in its opinion, claim 1 itself is of doubtful value, but both counsel for appellant and the Solicitor for the Patent Office seem to interpret it as applying only to claims 18

and 19, and error respecting the holding is assigned on behalf of appellant, who claims it to be a new ground of rejection. If it be a rejection on the ground that it does not meet the requirement of Sec. 4886, R.S. U.S.C. Title 35, § 31, 35 U.S.C.A. § 31, such rejection even though new would lie within the province of the board under Patent Office rule 139, supra.

However, we are not convinced that it was the purpose of the board to hold that claims 1 and 17 should not be allowed. In our opinion, if the board had so thought it would have found language with which to give clear-cut expression to the thought.

In view of our conclusion that the appealed claims were properly rejected on other grounds, it is not necessary to determine whether the board intended its expression "of doubtful value" to mean that claims 18 and 19 were rejectable on the ground of lack of utility, but it is not improper to say that, in our opinion, where the board proposes to declare a claim not allowable under the authority given it by rule 139, supra, it should state that finding clearly, and not use a phrase which leaves its meaning in doubt. A claim may not always be rejectable simply because the product is "of doubtful value"; doubts are frequently resolved in favor of utility.

One other phase of the controversy appears to require notice.

Appellant seems to be of opinion that the board "concedes that thio-propion-acid-anilide is $HS. CH_2CH_2 CONH C_6H_5$," as stated by appellant rather than $CH_3 CH_2 CS. N.H. C_6H_5$, as stated by the examiner.

What the board said, after quoting the paragraph, supra, from appellant's original specification relied upon for disclosure of claims 18 and 19, was: "This brief statement was somewhat amplified by amendment, but about all that can be said as to the amendment is that it tends to show that it is probable that the next higher homolog $(HS., CH_2. CH_2 CONH C_6H_5)$ would react in the same way as thioglycolic anilide. Less is said about the corresponding allyl derivative."

As a matter of fact, the board merely cited what had been asserted in the Novem-

ber 25, 1944, amendment to the application, and this could hardly be regarded as a concession of its correctness. However, even if it were treated as a concession by the board it would not be of any benefit to appellant if erroneous in fact which we understand to be the case.

From our study of the case we are convinced that appellant's disclosure is sufficient to support only the claims which have been allowed covering only a single species, and, under the well-settled rule, broader claims which have no basis of disclosure other than that of the single species are not allowable. In re Wahlforss et al., 117 F.2d 270, 28 C.C.P.A. (Patents) 867.

For the reasons indicated, the decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, Judge, sat during the argument of this case, but resigned before the opinion was prepared.