50 CCPA
**Application of Alexander WEBER.**
**Patent Appeal No. 6859.**

United States Court of Customs
and Patent Appeals.

Feb. 13, 1963.

Michael S. Striker, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from a decision of the Board of Appeals rejecting claims 20 through 23 and 25 of appellant's patent application Ser. No. 466,389, filed November 2, 1954.

The application discloses a Venetian blind having vertical slats suspended at their upper ends from runner elements slidable in a horizontal track. Swivel connections are interposed between the upper ends of the slats and the runner elements to permit each slat to turn on its vertical axis in unison by pulling a draw cord to change the angle that the slats make with the plane of the window. The slats are made in sections connected together with overlapping ends on the same side thereof.

The use of multiple sections for each slat allows easy adjustment as to length of a slat using standard parts. In addition, the connected slat sections may slightly tilt with respect to each other about an axis defined by a line connecting the hooks attaching adjacent sections to permit self-alignment in a vertical plane. It is also stated that multiple sections provide "a distinct vibration damping both as to sound and movement."

The sections of the slat members are rectangular pieces with each section having a pair of oval openings in one end with a pair of hooks at the other end for connecting the slats together.

The connecting means may be modified by providing a pair of keyhole slots in one end of the slat section and a pair of stud-like elements on the other end. Sheet metal is preferred as the material used for the slat sections.

The board affirmed the examiner's final rejection of claims 20 to 23 as unpatentable over Moore and claim 25 as unpatentable over McLennan taken in view of Moore.

The references relied on are:

| | | |
|---|---|---|
| Moore | No. 162,250 | April 20, 1875. |
| McLennan | No. 2,188,575 | January 30, 1940. |

The Moore patent discloses a fire shield designed to suspend from the roof of a building to provide heat protection against adjacent burning buildings. The shield comprises a plurality of vertical rows of rectangular sheet-metal plates. The connecting means are formed by bending each end of the plate, thus providing a channel and a lip at opposite ends of the plate. Each lip portion is provided with a lug to protrude through a square opening of the adjoining plate. The ends of each plate are overlapped on opposite sides. Moore also shows a modified form of connection means comprising a pair of laterally spaced hooks on one end of the plate and a pair of laterally spaced holes on the other end.

The McLennan patent discloses a Venetian-type blind of the vertical slat type with slats suspended by their upper ends from runner elements which are slidable in a horizontal track. Swivel connections are interposed between the upper ends of the slats and the runner elements to permit each slat to turn about its vertical axis, to change the angle that the slats make with the plane of the window. The slat members may be made in one piece or in sections connected by means of a

swivel pin which permits turning of the respective sections independently to be set at different angles. The lower slat sections, similar to the upper slat sections, are linked together by chains.

Claims 20 through 23 are directed to the sectional slat. Claim 25 is directed to a blind having an elongated horizontal guide with the sectional slat members being slidably suspended from the guide. Claim 24 was allowed.

We quote claims 20 and 25 as representative of the appealed claims:

"20. For use in a blind, in combination, a plurality of slat sections made from thin, elastically resilient material and being arranged in a row extending in one direction and substantially in one plane; connecting means connecting said sections to each other tiltable about respective axes located in said plane and substantially normal to said direction so that said connected slat sections form an elongated slat member; and suspension means for suspending said slat member at the upper end thereof so that said sections align each other in a vertical plane under the action of the force of gravity.

"25. A blind comprising, in combination, elongated horizontal guide means; a plurality of elongated slat members, each of the slat members comprising a plurality of slat sections made from thin, elastically resilient material and being arranged in a row extending in one direction and substantially in one plane, and connecting means connecting said sections to each other. tiltable about respective axes located in said plane and substantially normal to said direction; suspension means slidably arranged in said guide means and attached to the upper ends of said slat members, respectively; and moving means connected to said suspension means for moving said plurality of elongated slat members between a first position in which they are aligned adjacent to each other in a vertical plane extending in longitu-

dinal direction of said guide means and a second position in which said slat members are arranged in substantially parallel vertical planes inclined to the longitudinal direction of said guide means."

Claim 21, like claim 20, is drawn to the sectional slat, but in addition it recites that the sections overlap, with the overlap of each section with its adjacent sections being on the same side thereof.

Claim 22 further defines the sectional slat by reciting that the connecting means comprises "a pair of engaging members" which are received in "a pair of cutouts."

Claim 23, in a recitation similar to that of claim 22, discloses the connecting means as comprised of "a pair of hook members" which are received in "a pair of cutouts."

It is apparent that claims 20 through 23 specify a slat member with a plurality of slat sections connected together forming a row of plates extending vertically in one plane. Novelty of this general structure is dispelled by the Moore patent disclosing, as it does, a plurality of sheet-metal plates connected together to form a row of plates extending vertically in one plane.

The question for resolution is whether the instant claims patentably distinguish over the references.

The limitation that the claimed slat member is "for use in a blind," making no reference to a "window" blind, does not, in our judgment, exclude the fire shield of Moore. The Moore shield is a *cover* or *screen* designed for the purposes indicated. Webster's New International Dictionary, Second Edition, Unabridged, defines blind as: "1. Something to hinder sight or keep out light; a screen; a cover." It would therefore seem that the term "blind" including screen or cover would serve synonymously with Moore's fire shield.

Appellant contends that Moore discloses nothing even in vague resemblance to a slat as that word is commonly understood and as defined in Webster, supra. The argument is advanced on the basis

of the relative dimensions of the slat and Moore's sheet-metal plates. Appellant's quotation from Webster attributes to slat as meaning a "thin, narrow bar especially of wood or metal." Referring again to Webster,[1] supra, the definition clearly depicts the relativity of the adjectives "thin" and "narrow." This renders apt and logical the consideration of the length and width of a vertical row of Moore's plates. It seems obvious that size does not impress itself as a characteristic of slats. The requirements of varying situations of adaptation would have essential impact on the matter of size relating to Venetian blind slats.

Appellant, placing emphasis upon the limitation "thin, elastically resilient material," contends that Moore's plates are devoid of such material. Moore does not refer to the material composition of his "sheet-metal plates." It may be safely assumed that the plates are composed of a commonly used material. Sheet-metal structures are commonly composed of sheet steel reduced to elastic resiliency. We agree with the board that a sheet-metal plate is an elastically resilient material as well as being thin and that the adjective "thin" is of relative import lacking the basis for patentable distinction. In re Lechene, 277 F.2d 173, 47 CCPA 923; In re Fahrni, 210 F.2d 302, 41 CCPA 768.

It is pointed out that Moore shows a plurality of slat sections with hooks for connecting the sections to each other tiltable about respective axes located in the plane of the slats in the same manner as claimed by appellant.

As heretofore pointed out, claims 21 through 23 add to claim 20 certain structural features not found in Moore. We must therefore determine whether these features would have been obvious to one having ordinary skill in the art.

Claim 21 adds to claim 20 the feature of end overlaps on the same side of the slat sections and thus distinguishes over Moore's plate overlaps on opposite sides.

We agree with the board that, where desired, conversion of overlap from opposite sides of the plate to the same side would be a simple expedient of choice. This would be no more than an obvious reversal of arrangement and not patentable. In re Gazda, 219 F.2d 449, 42 CCPA 770.

In disposing of the limitation which claim 22 adds to claim 21 relating to a pair of engaging members and a pair of cutouts as the connecting means, the board agreed with the examiner, as we do, that this does not distinguish over the hooks and receiving openings shown in Moore, stating further with respect to claims 22 and 23:

"* * * the two fastening means at the ends of each section shown in the modification of Fig. 5 of that patent would suggest to one skilled in the art as an obvious expedient to duplicate the single fastening means at each end in the modification of Figs. 3 and 4 of the same patent."

We now focus our attention on claim 25, which stands rejected as unpatentable over McLennan in view of Moore. This claim defines a blind with elongated horizontal guide means, a plurality of elongated slat members, suspension means and moving means for turning the slat members in unison. All of these elements are disclosed by McLennan. Claim 25, however, distinguishes structurally over McLennan in specifying slat members comprising a plurality of sections connected to each other by means permitting them to tilt about axes in the plane of the slat member and normal to its longitudinal axis. Moore teaches a sectional slat structure. The examiner held that to substitute the McLennan slat members would be obvious in the light of Moore's teaching. The Board of Ap-

[1]. "thin, adj. * * * 1. Having, or being of relatively little depth or extent from one surface to its opposite; not thick; of a solid body of three dimensions, measuring little in the third dimension; of little thickness; as, thin paper.

"narrow, adj. * * * 1. Of little breadth, esp. in comparison with the length; not wide or broad; as, a narrow board."

peals affirmed the examiner's rejection of this claim but in so doing made specific reference only to McLennan's teaching of swivel connected members with the suggestion of obviousness to substitute the connecting means of Moore for the swivel connection of McLennan.

This apparent divergence of views between the board and the examiner poses no problem to our consideration of McLennan's disclosure of a one-piece slat member. The decision of the board gave no indication of error in the examiner's broader holding. In re Launder et al., 222 F.2d 371, 42 CCPA 886; In re Hall, 208 F.2d 370, 41 CCPA 759; In re Lloyd, 172 F.2d 583, 36 CCPA 817.

In contesting the rejection of Claim 25 appellant asserts that "the Moore patent does not disclose a blind composed of large metal sheet plates" consequently representing nonanalogous art. Broadly, appellant's position is that the art of blinds is foreign to the art of fire shields to the extent that one working in the field of blinds would not look to the field of fire shields.

Appellant's argument is unpersuasive. We are here concerned with vertically suspended slat members and not novelty in the blind per se. The art involved is not that of the composite structure but the art of an essential component means, i. e., vertically suspended slat members. The claimed slat members are not patentably distinct whether they are used in a blind or a fire shield. It is obvious that one seeking to effect improvement in the vertically suspended slat members of McLennan would find suggestion for such improvement in Moore whether it be to damp swinging motion or alignment in a vertical plane. If a sectional slat member were desired to dampen swinging with more facility than a one-piece member, McLennan affords the suggestion to use a multiple-piece member.

We do not find sufficient substance in the appealed claims to render them patentable over the prior art.

We affirm the decision of the Board of Appeals.

Affirmed.