**Application of Anthony L. GARNERO.**
**Patent Appeal No. 7260.**

United States Court of Customs
and Patent Appeals.
May 20, 1965.

Smith and Rich, JJ., dissented.

Herman Hersh, Chicago, Ill. (James H. Littlepage, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Anthony L. Garnero appeals from a decision of the Board of Appeals affirming the examiner's rejection of claims 2–12, all the claims in appellant's application.[1]

The invention is a method of forming an insulating mat of expanded perlite, an inorganic siliceous material. When perlite is passed through a zone heated to a temperature such that the particles are in a "pyroplastic" state, combined water contained in the perlite particles is driven off. As a result, the particles expand and become porous. The porous particles still in the pyroplastic state are collected on an endless conveyor where they become fused together forming a porous mat. Claims 2 and 5 are illustrative:

"2. The method of producing a composite structure of an expanded perlite comprising the steps of heating the perlite while in movement individually in finely divided form to raise the temperature of the perlite to above 1200° F. but below 2500° F. whereby the perlite is caused concurrently to release combined water while the entire mass is in a pyroplastic stage to cause expansion, and projecting the individually heated particles of perlite onto a collecting surface to agglomerate the expand-

[1]. Serial No. 714,831 filed February 12, 1958 for "Structural Material of Expand-

ed Minerals and Method for Manufacturing."

ing perlite while still in the expanded and pyroplasticc stage to form a composite structure.

"5. The method of producing a composite structure of an expanded perlite comprising the steps of heating finely divided perlite particles in movement in an individual finely divided state for a time concurrently to raise the temperature of the entire mass of the mineral to a pyroplastic stage during which the combined water is released to expand the particles and to flux the mineral, and projecting the heated particles of perlite onto a collecting wall to agglomerate the expanded perlite particles while in the expanded and pyroplastic stage to form a composite structure."

The references relied on are:

Slidell    1,845,350   February 16, 1932
Wyatt     1,882,052    October 11, 1932
Hermann 1,929,425   October 10, 1933
Parsons  2,341,059 February   8, 1944
"Perlite, The Wonder Material," Page Convertor Co. (pp. 1–3) (1949)

Parsons discloses the production of lightweight, porous, ceramic materials for insulation by passing ceramic particles through a high temperature zone and then fusing the particles in a collecting zone to form a composite structure. Ceramic material such as clay is ground into particles and passed through a furnace. According to the reference:

"The temperature of the furnace and the time allowed for the particles to remain therein are calculated to allow the surfaces of the individual particles to come into a fused or molten state. * * * The particles are collected in a zone of the furnace in a mass, each particle adhering to one or more of the others by virtue of their respective fused surfaces."

Porosity may be obtained by expansion of gas within the particles. Thus,

" * * * a combustible material such as sawdust, naphthalene, or other organic material is incorporated into the molded clay mass. The combustible material is then burned out during the firing, and voids are left in the product. Gas-liberating substances are also sometimes incorporated with the clay in order to lend porosity to the resulting product. * * * "

Parsons further states:

"In order further to increase the space between the particles, the addition of fluffing agents such as asbestos or mineral wool, cyanite, and the like is also within the scope of this invention. The fluffing agents may act to further separate the particles either by holding the particles apart mechanically or by liberating gas during the formation of the porous mass, thus increasing the size of the voids between the particles. * * * For low temperature work, asbestos or mineral wool works very satisfactorily. * * * Other suitable mineral fluffing agents are vermiculite * * * and silica, the latter preferably at or above 500° C., at which temperature it has an expanding effect. Gas-producing or gas-liberating materials such as gypsum may be incorporated into the dry mix which, when exposed to the high temperature, will volatilize and form cellular structures within the mass.

"Furthermore, to accelerate the softening of the surfaces and subsequent bonding action, a flux which is easily vaporizable, such as sodium chloride, may be introduced into the furnace * * *."

The examiner relied upon the Perlite article for the suggestion of using perlite in the Parsons' process. The article states that perlite possesses the high insulating properties of mineral wool and vermiculite and yet has high strength. Perlite is described as a volcanic glass containing 65 to 75% silica. It is stated that temperatures of 1500–2200° F. expand the perlite 600% to

1500% or more in volume due to the formation of air or gas bubbles. In order for expansion to occur, "it is necessary to heat the glassy particles to the proper viscosity or softness, so that the moisture and/or gas entrapped in the ore will expand the softened mass into several times its original volume."

The Perlite article, which is apparently an advertising brochure for a specific indirectly heated expansion furnace for producing separate particles of expanded perlite, states that several disadvantages result from the use of direct flame heaters. One disadvantage is that there is loss due to unexpanded ore. Another so-called disadvantage is that "there is a fusion of hot particles into clinkers." Appellant argues that this statement would teach away from agglomerating as in the Parsons' process. We disagree. Certainly agglomeration is a disadvantage when individual particles of expanded perlite are desired. However, we find no suggestion that such agglomeration would prevent use of perlite in the Parsons' process. Indeed, the fact that agglomeration takes place at normal expansion temperatures would indicate that perlite was well suited for the Parson's process.

Both the examiner and the board felt that use of perlite in the Parsons' process would be obvious because Parsons suggested the use of materials similar to perlite. We note that Parsons suggests the use of vermiculites and mineral wool in forming a porous mat. The Perlite article indicates that perlite has the insulating properties of mineral wool and vermiculite and approaches the structural strength of pumice and slags. Claim 2 calls for heating the particles to a temperature of "above 1200° F. but below 2500° F." in order to release water from the particles and cause them to expand. Perlite discloses expansion temperatures of about 1500–2000° F.

The only limitation in claim 5 not present in claim 2 is:

"* * * to raise the temperature of the entire mass of the mineral to a pyroplastic stage during which the combined water is released to expand the particles and to flux the mineral * * *."

Apparently this limitation is used in place of the "1200° F. but below 2500° F." limitation of claim 2. Reference to applicant's specification indicates that the pyroplastic stage and suitable agglomeration are achieved at temperatures as low as 1200° F. and that optimum expansion and agglomeration are achieved in a temperature range of 1800–2200° F. This coincides closely with the Perlite range of 1500–2000° F. We think that the references, when considered together, would suggest the expansion and agglomeration of perlite in the Parsons' process.

The remaining claims are dependent upon claims 2 and 5. Claims 3 and 4 recite temperature ranges of 1600–2400° F. and 1900–2200° F., respectively. Claim 4 recites a particle size of less than 20 mesh and a heating time of from less than 1 to 360 seconds. Claims 6 and 7 call for the addition of a siliceous inorganic eutectic material. Claims 8, 9 and 10 recite the addition of an inorganic fiber of higher fusion point than the pyroplastic stage of the perlite. Claim 9 recites the amount of fiber, 0.5 to 10%, and claim 10 recites that the fiber is glass.

The portions of the record pertinent to the above limitations are summarized below. The recited temperature ranges overlap the 1500–2000° F. range disclosed by Perlite. With regard to particle size, we note that appellant states in his specification that "the size of the particles of perlite is not critical * *." The eutectic material aids in bonding the perlite particles together. Parsons discloses the addition of a flux "to accelerate the softening of the surfaces and subsequent bonding action * * *." Although the addition of glass fibers is not disclosed, asbestos is added by Parsons as a "fluffing agent." The board's position was as follows:

"We agree with the Examiner that any differences, such as the par-

ticular dimensions of the perlite particles as in claim 4, or the specific amounts of the eutectic materials and the inorganic fibers (including the particular fiber) are mere matters of choice within the ordinary skill of the art. We note that Parsons shows that it is old to use fluxing agents (equivalent of the eutectic material) and fibrous material (the asbestos in the example)."

The appellant in his brief has not controverted the above holding of the board. He apparently is willing to test patentability on the broad claims, 2 and 5, although he did assign the above holding as error. At any rate, in the absence of clearly demonstrated error on the part of the board, we find no basis for reversal.

The decision is thus affirmed.

Affirmed.

SMITH, Judge (dissenting) with whom RICH, J., joins.

The principal rejection before us is obviousness of the claimed invention under 35 U.S.C. § 103. With the benefit of appellant's disclosure before them and by treating fragments of the claimed invention rather than the invention as a whole, the majority finds no problem in affirming the examiner and the board, who, like the majority, have failed to consider the claimed subject matter as a whole, and have relied on a most complete hindsight reconstruction of the prior art in finding what would have been obvious to one of ordinary skill in this art at the time of appellant's invention.

I shall first consider appealed claims 2–12 in determining what appellant claims to be his invention. I do this because I do not agree with the analysis of the majority. This determination is facilitated by considering claim 2, broken down into its several elements as follows:

"2. The method of producing a composite structure of an expanded perlite comprising the steps of:

"[A.] heating the perlite while in movement individually in fine-ly divided form to raise the temperature of the perlite to above 1200° F. but below 2500° F. whereby the perlite is caused concurrently to release combined water while the entire mass is in a pyroplastic stage to cause expansion, and

"[B.] projecting the individually heated particles of perlite onto a collecting surface to agglomerate the expanding perlite while still in the expanded and pyroplastic stage to form a composite structure."

Claims 3 and 4 are dependent on claim 2 and will stand or fall with it. Claim 5, however, is an independent claim which, when broken down into its several elements, reads as follows:

"5. The method of producing a composite structure of an expanded perlite comprising the steps of:

"[A.] heating finely divided perlite particles in movement in an individual finely divided state for a time concurrently to raise the temperature of the entire mass of the mineral to a pyroplastic stage during which the combined water is released to expand the particles and to flux the mineral, and

"[B.] projecting the heated particles of perlite onto a collecting wall to agglomerate the expanded perlite particles while in the expanded and pyroplastic stage to form a composite structure."

Appealed claims 6–12 are dependent on claim 5 and claims 6–10 and 12 stand or fall with it. However, there is a separate ground of rejection of claim 11 which is ignored by the majority but which I think requires separate treatment.

The majority, the solicitor and appellant agree that Parsons and the Perlite article are the most pertinent references. Parsons discloses an apparatus for producing lightweight, porous cer-

amic materials useful for sound and heat insulation. Discrete solid ceramic particles are introduced into the top of a furnace and emerge as solid particles which, however, have become fused and are thus bonded together when collected in the form of a sheet on a conveyor at the discharge end of the furnace. While various ceramic materials may be utilized by Parsons in preparing the product, there is no disclosure that such materials are to be expanded in the final product. Instead, Parsons discloses the addition of what he terms "fluffing agents," which expand on heating. These agents, when incorporated into the dry mix of ceramic materials fed to the furnace and exposed to a high temperature, form expanded cellular structures which fill the spaces between the still solid ceramic particles and thus act as a matrix or binder for holding said particles in the final product.

As distinguished from Parsons, the central feature of appellant's invention is found in the fabrication of a composite insulation panel of *expanded* perlite particles, by a method in which the perlite particles are caused simultaneously to expand and to agglomerate while in the expanded state to form a porous composite insulation panel without the need for use of the Parsons "fluffing agents" to provide the matrix or binder for such particles.

The Perlite article describes expanded perlite as having the high insulating properties of vermiculite as well as the structural strength of cinders, and describes the expansion of perlite at temperatures from 1500–2200° F. The reference discloses the heating and expansion of perlite as discrete particles and teaches that:

> "To process a perlitic ore, it is necessary to heat the glassy particles to the proper viscosity or softness, so that the moisture and/or gas entrapped in the ore will expand the softened mass into several times its original volume."

The Perlite reference thus teaches only a method for causing the expansion of individual perlite particles by heating them. It does not teach one of ordinary skill in this art that it is possible to expand perlite and form the resultant discrete expanded particles into a structural material by the adhesion of expanded particle to expanded particle, using the freed water as a flux in the process. While the Perlite reference teaches expansion of individual discrete particles of perlite, it lacks any teaching as to steps required for utilization of the "pyroplastic" state of the particles for effecting the adhesion of the expanded particles to one another in forming a structural panel.

In teaching merely the expansion of perlite to form discrete expanded particles, the Perlite reference does not suggest other significant features of appellant's invention which, as pointed out in his specification, include the observation that:

> "When the perlite particles are expanded separate and apart from agglomeration, the vapor necessary for fluxing the perlite is not available for subsequent agglomeration so that it becomes necessary to heat the expanded particles to a temperature in excess of about 2400° F. for coalescence. Since such temperatures are close to the temperature of collapse and since much greater time is required to agglomerate the previously expanded particles, it will be found difficult to form a composite structure of previously expanded perlite particles having the degree of porosity and strength which is capable of being achieved by the concepts embodying the features of this invention. It is for this reason that the art has had to turn to the use of external binders in combinations with the expanded perlite for the manufacture of porous products."

It is the position of the examiner and the board that it would be obvious to use perlite in Parsons' method because the ceramic particles utilized by Parsons are analogous to perlite. The error I find in this position of the examiner and the

board is inherent in the statement from the solicitor's brief that:

"The fact that appellant treats a different form of the material does not make the process patentable to him. It has been held that the steps comprising the process are the essential features for consideration in determining the right of appellants to a patent—not the particular material to which the process is applied, In re Swain et al., 33 CCPA 833, 154 F.2d 118; In re Fahrni, 41 CCPA 768, 210 F.2d 302."

The position as thus stated can be justified only by overlooking the fact that the "method" claimed, as stated in the preambles of the appealed claims, is a "method of producing a composite structure of an expanded perlite." The art does not disclose such a method. It is true the art does disclose the manipulative steps of the method claimed, but in such a context that I do not think it would have been obvious to one of ordinary skill in this art to take these disclosures and utilize them for a specific end as appellant has done to produce a composite structural member of expanded perlite. The majority, the examiner and the board base their position on such an analysis of appellant's invention that the claimed invention is reduced to a use of the Parsons prior art furnace and method (for the compaction of solid particles) to the expansion and subsequent adhesion of expanded individual perlite particles to each other. I do not agree that this is all appellant has taught the art. There is no question but appellant's apparatus and manipulative steps correspond to a marked degree to the Parsons apparatus and method. However, I do not agree that this is enough to establish obviousness of appellant's claimed method. In Curtis's Law of Patents (4th ed. 1873), the controlling principle is stated at p. 12:

" * * * A process may be altogether new, whether the machinery by which it is carried on be new or old. A new process may be invented or discovered, which may require the use of a newly-invented machine. In such case, if both the process and the machine were invented by the same person, he could take separate patents for them. A new process may be carried on by the use of an old machine, in a mode in which it was never used before * * *. In such a case, the patentability of the process in no degree depends upon the characteristic principle of the machine, although machinery is essential to the process, and although a particular machine may be required. * * *"

All elements of the appealed claims must be considered in determining what constitutes appellant's method. Here the failure of the majority, the examiner and the board to consider and give meaning to the preambles of these claims underlies what I consider to be their error. The method as defined in these claims covers more than the use of perlite in the Parsons furnace. Thus the cases relied upon by the solicitor as supporting his position are not persuasive. The method here claimed cannot be considered apart from its purpose. When appellant's claimed invention "as a whole," is thus considered, it is seen that it embraces passing perlite particles, in finely divided form, through a zone under time and temperature conditions sufficient to achieve a pyroplastic state in the particles before the combined water is driven off. The pyroplastic particles of perlite are expanded as the vapor given off by the combined water is released. While the particles of perlite are in the pyroplastic state and the released water is present as a "flux," they are caused to adhere to one another when they are brought together on an endless conveyor, the result being the formation of a porous insulation panel. It is only by a hindsight addition of this disclosure to Parsons that his "clinker" becomes porous and the discrete expanded particles of the Perlite reference form a composite structure.

I do not think such a method was obvious to one of ordinary skill in this

art from the disclosures of the references relied on.

Accordingly, I would *reverse* the rejection of all appealed claims on the ground of obviousness of the claimed invention over the two main references. However, in view of appellant's failure to overcome the other rejection of claim 11 as incomplete, indefinite and based on an insufficient disclosure, I would *affirm* the rejection of that claim. In re Le Baron, 223 F.2d 471, 42 CCPA 956.